COURT OF APPEALS
DECISION
DATED AND FILED

November 21, 2019

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2018AP2055-CR**

Cir. Ct. No. 2015CF360

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

 V.

JAE M. ROBINSON,

   DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Sauk County:  MICHAEL P. SCRENOCK, Judge.  *Affirmed*.

Before Fitzpatrick, P.J., Blanchard, and Kloppenburg, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Jae Robinson appeals a judgment of conviction for first-degree intentional homicide and for substantial battery as party to a crime. He also appeals the circuit court's order denying his motion for post-conviction relief. Robinson argues that (1) the circuit court erred by admitting other-acts evidence, (2) his trial counsel was ineffective, and (3) he should receive a new trial in the interest of justice. We affirm.

## *Background*

¶2 The charges against Robinson arose from an incident occurring around bar time in Baraboo in which Robinson and two friends, Christopher Nash and Matthew Harvey, fought two other men, Anthony Inman and A.P. The fight occurred near a bar known as "Bumps."

¶3 Robinson's case was tried to a jury. By the close of trial, many of the facts were undisputed. Prior to the fight, Inman and A.P. were outside Bumps while Robinson and his friends were about a block up the street. Inman and A.P. proceeded toward Robinson's location, and the fight began almost immediately. During the fight, Robinson obtained a knife that Inman had been carrying. Robinson inflicted multiple stab wounds on Inman, and Inman died at the scene. A.P. suffered serious injuries.

¶4 Who started the fight and why remained in dispute. Robinson testified and maintained that he wielded the knife against Inman in self-defense after Inman ran at him with the knife.

*Discussion*

*A. Circuit Court's Admission Of Other-Acts Evidence*

¶5    We turn first to Robinson's argument that the circuit court erred by admitting other-acts evidence. "[T]he decision to admit other-acts evidence is reviewed for an erroneous exercise of discretion." *State v. Lock*, 2012 WI App 99, ¶43, 344 Wis. 2d 166, 823 N.W.2d 378. "'A [trial] court properly exercises its discretion when it examines the relevant facts, applies a proper standard of law, and uses a demonstrably rational process to reach a conclusion that a reasonable judge could reach.'" *Id.* (alteration in original) (quoted source omitted). "We generally look for reasons to sustain the trial court's discretionary decisions." *Id.*

¶6    In addressing the circuit court's decision to admit other-acts evidence, we follow the three-prong test from *State v. Sullivan*, 216 Wis. 2d 768, 576 N.W.2d 30 (1998). First, we ask whether the evidence is "offered for an acceptable purpose under Wis. Stat. § (Rule) 904.04(2), such as establishing motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Sullivan*, 216 Wis. 2d at 772. Second, we ask whether the evidence is relevant. *Id.* Finally, we consider whether "the probative value of the other acts evidence [is] substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence[.] *See* Wis. Stat. § (Rule) 904.03." *Id.* at 772-73.

¶7    The other-acts evidence that Robinson argues that the circuit court erroneously admitted consisted of: (1) evidence that Robinson verbally harassed a man at a Kwik Trip during the hours leading up to the fight, (2) evidence that Robinson punched a man in the jaw during the hours leading up to the fight; and

(3) statements by a witness that Robinson was "on a rampage" on the night of the fight.

¶8    Applying the *Sullivan* test, we agree with the State that the circuit court reasonably concluded that this evidence satisfies the first two prongs of the test because it was offered to prove, and relevant to, Robinson's motive and intent. The evidence was confined to events on the night of the fight resulting in Inman's death, and it tended to support the State's theory that Robinson was looking to get into fights that night and started the fight with Inman and A.P. The evidence tended to show that Robinson acted with the requisite intent when he killed Inman, and it also tended to disprove Robinson's claim that he acted in self-defense.

¶9    Robinson argues that there was "no connection" between the other-acts evidence and the fight, but Robinson bases this argument on an incomplete characterization of the State's theory. Robinson points out that the State claimed at trial that he and his friends were waiting near Bumps to ambush two men named Templin and Schleichert, and that Robinson and his friends mistook Inman and A.P. for Templin and Schleichert. However, as noted above, the State also asserted more generally that Robinson was looking to get into fights that night. The other-acts evidence supported the State's general assertion and, for that matter, it also supported the State's more specific ambush theory.

¶10    As to the third prong of the *Sullivan* test, we conclude that the circuit court reasonably determined that Robinson failed to demonstrate that the probative value of the other-acts evidence substantially outweighed the danger of unfair prejudice. *See State v. Hurley*, 2015 WI 35, ¶58, 361 Wis. 2d 529, 861 N.W.2d 174. The risk of unfair prejudice was low because the evidence was not likely to play on the jury's sympathies when compared to other relevant,

4

admissible evidence that the jury would hear about the details of the homicide. That evidence included testimony that Robinson inflicted twenty-six knife wounds on Inman, including stab wounds that injured Inman's lungs, heart, and liver; that Robinson suffered no knife wounds other than minor cuts on his fingers; that, shortly after he killed Inman, Robinson laughed as he stated that he had "stabbed the shit out of him"; and that Robinson later referred to Inman and A.P. as "trailer trash" during a conversation with Robinson's sister in jail.

### B. Ineffective Assistance Of Counsel

¶11     We turn to Robison's argument that his trial counsel was ineffective. To show ineffective assistance of counsel, the defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  To establish deficient performance, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688.  To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  "Whether counsel's performance satisfies the constitutional standard for ineffective assistance of counsel is a question of law, which [appellate courts] review de novo." *State v. Thiel*, 2003 WI 111, ¶21, 264 Wis. 2d 571, 665 N.W.2d 305.

¶12     Robinson argues that trial counsel was ineffective by failing to (1) object to additional other-acts evidence, (2) develop a theory that A.P. had a motive to fight Robinson, and (3) object to one of the prosecutor's assertions during closing arguments.  Robinson does not show ineffective assistance on any of these grounds.

### 1. Ineffective Assistance—Failure To Object To
### Other-Acts Evidence

¶13    Robinson argues that counsel was ineffective by failing to object to additional other-acts evidence, namely, evidence that Robinson harassed two women at Bumps earlier on the night of the fight while Robinson and Nash were inside Bumps.  We reject this argument because such an objection would not have had merit.  *See* ***State v. Swinson***, 2003 WI App 45, ¶59, 261 Wis. 2d 633, 660 N.W.2d 12 ("Trial counsel's failure to bring a meritless motion does not constitute deficient performance.").

¶14    Our analysis here is similar to our analysis of the other-acts evidence we have already discussed.  Robinson's harassing conduct toward the two women was probative of his plan, motive, and intent.  It showed his general level of belligerence that night.  Additionally, along with other contextual evidence the jury heard, it explained why Robinson and his friends might have waited outside Bumps to ambush Templin and Schleichert.  The jury heard that, on the night of the fight, around the same time that Robinson was harassing the two women at Bumps, Templin and Schleichert were also at Bumps and made their displeasure with Robinson clear.  Schleichert, who was dating one of the women, nearly had a confrontation with Robinson, and Templin repeatedly asked Robinson to leave.

¶15    In short, without the evidence of Robinson's conduct toward the two women at Bumps, the jury would have lacked a complete picture of why Robinson might have returned to Bumps later that night intending to fight Templin and Schleichert.  Thus, the evidence was highly probative.  And, for the reasons already discussed, this evidence was unlikely to be unfairly prejudicial when considered in the context of other relevant, admissible damaging evidence the jury would hear.

### 2. Ineffective Assistance—Failure To Develop Theory That A.P. Had Motive

¶16     Robinson argues that trial counsel was ineffective by failing to develop the theory that A.P. was motivated to instigate a fight with Robinson out of jealousy over one of the women Robinson harassed at Bumps. We reject this argument because Robinson fails to show that it was unreasonable for counsel not to pursue this theory.

¶17     As far as Robinson's briefing shows, the jealousy theory had scant evidentiary support. It is true there was evidence that Robinson and A.P. were both interested in the woman. However, Robinson does not point to evidence that A.P. had any interaction with Robinson during the fight, or that A.P. was even aware of Robinson's conduct toward the woman. Thus, we agree with the circuit court that it was reasonable for trial counsel not to pursue the jealousy theory and to instead pursue a theory that did not depend on ascribing any particular motive to A.P. Counsel chose to argue instead that the fight was fueled by alcohol and began with spontaneous "trash talking" when the two sets of men encountered each other on the street outside Bumps. Robinson does not dispute that there was evidence to support that argument.

### 3. Ineffective Assistance—Failure To Object To Prosecutor's Assertion During Closing Arguments

¶18     Robinson argues that trial counsel was ineffective by failing to object to the prosecutor's assertion during closing arguments that, immediately prior to the fight, Robinson and Nash parked their vehicle so they could see who was exiting Bumps. Robinson argues this assertion misrepresented the evidence as to the vehicle's actual position, and unfairly fed into the State's ambush theory.

¶19    Regardless of the accuracy of the prosecutor's assertion, we conclude that Robinson fails to show prejudice. The car's positioning was of comparatively little significance in the State's ambush theory. No matter the car's position, it was undisputed that, immediately prior to the fight, Robinson was not in the car but on foot in an area close enough to Bumps to see who was in the general area outside Bumps. Further, the jury heard other damaging evidence that supported the State's ambush theory. This included evidence that Robinson and Nash had contacted Harvey in advance for "back-up"; that Robinson, Nash, and Harvey brought a BB gun, a tire iron, and a hammer that were used during the fight; and that, during the fight, Nash exclaimed, "these aren't the right guys," or that these are "the wrong guys."

## C. New Trial In The Interest Of Justice

¶20    Finally, Robinson contends that we should exercise our discretionary authority to grant a new trial in the interest of justice because the real controversy was not fully tried. We exercise this authority only in "'exceptional cases.'" *See State v. Armstrong*, 2005 WI 119, ¶114, 283 Wis. 2d 639, 700 N.W.2d 98 (quoted source omitted). Robinson does not persuade us that this is an exceptional case. His arguments for reversal in the interest of justice add nothing new to the arguments we have already rejected.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5. (2017-18).