# COURT OF APPEALS
## DECISION
## DATED AND FILED

## June 13, 2023

Sheila T. Reiff
Clerk of Court of Appeals

## NOTICE

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal Nos.** **2022AP223-CR**
**2022AP224-CR**
**2022AP225-CR**
**2022AP226-CR**

Cir. Ct. Nos. 2017CF805
2018CF394
2018CF490
2019CF268

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

 V.

BRET J. DORTON,

   DEFENDANT-APPELLANT.

---

APPEALS from judgments and an order of the circuit court for Outagamie County: VINCENT R. BISKUPIC, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Bret Dorton appeals from four judgments of conviction entered as part of a global plea agreement and from an order denying his postconviction motion to withdraw his pleas in each of the four cases. The sole issue on appeal is whether Dorton was entitled to a hearing on his plea withdrawal motions. We conclude that the facts alleged in the plea withdrawal motions were insufficient to warrant an evidentiary hearing because, even if true, they did not establish the prejudice element of Dorton's claim of ineffective assistance of counsel. We therefore affirm.

## BACKGROUND

¶2 In Outagamie County case No. 2017CF805 (Appeal No. 2022AP223-CR or "the theft case"), the State charged Dorton, as a repeat offender, with: (1) a second or subsequent offense of possession of methamphetamine, as a party to a crime; (2) obstructing an officer; (3) retail theft; and (4) possession of drug paraphernalia. These charges arose from a shoplifting incident at a Target store, during the investigation of which Dorton gave police a false name and police discovered a syringe of methamphetamine in Dorton's car.

¶3 In Outagamie County case No. 2018CF394 (Appeal No. 2022AP224-CR), the State charged Dorton with: (1) second-degree reckless injury; (2) delivery of a schedule II narcotic; and (3) two counts of felony bail jumping. These charges were based on allegations that Rose[1] was hospitalized after overdosing on fentanyl that Dorton supplied to her.

---

[1] These matters involve two overdose victims. Pursuant to the policy underlying WIS. STAT. RULE 809.86(4) (2021-22), we use pseudonyms instead of the victims' names.

(continued)

¶4 In Outagamie County case No. 2018CF490 (Appeal No. 2022AP225-CR), the State charged Dorton with two counts of felony bail jumping. These charges were based upon Dorton's failure to comply with bond conditions in the theft case requiring him to report weekly to Outagamie County Criminal Justice Treatment Services for urine testing.

¶5 In Outagamie County case No. 2019CF268 (Appeal No. 2022AP226-CR or "the heroin case"), the State charged Dorton with two counts of delivering heroin. These charges were based on allegations that Nina died of an overdose after Dorton supplied Nina and another woman with heroin.

¶6 Relevant to these appeals, the State provided Dorton with a police report describing an interview that Sergeant Lidbury of the Appleton Police Department conducted with Rose at the hospital on the night of her overdose, along with a partial video of the interview. According to the police report, Rose told Lidbury that Dorton had picked her up in his car and that Rose then took four Xanax pills "in her possession" and crushed morphine that she had "procured" with the intent of committing suicide. Lidbury asked Rose whether the crushed morphine she ingested could have been heroin. Rose agreed it was possible, but said Dorton told her "the valley was dry." Lidbury told Rose that he did not believe that statement because he "knew Dorton to always score heroin." When Lidbury asked Rose whether what she took felt like heroin or morphine, she responded that she did not know because she "fell out right away." When Lidbury

---

All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

3

asked whether Rose had obtained the crushed morphine from Dorton, she said that Dorton had it with him when he picked her up.

¶7    Lidbury then discussed Nina's fatal overdose with Rose, and Lidbury said that Dorton had provided Rose with heroin or morphine that had "almost killed her." Lidbury asked whether Dorton knew that Rose was going to try to hurt herself. Rose stated that Dorton did not know about that, and she agreed with Lidbury's suggestion that Dorton was "just assisting by getting the dope." Rose said she never specified to Dorton whether she wanted morphine or heroin; she just wanted to "get high."

¶8    Dorton's trial counsel, Gary Schmidt, informed the circuit court at a pretrial conference held on June 3, 2019, that the defense was seeking any additional video or audio recording of Rose's interview. Assistant Attorney General Peter Hahn informed the court that the State had made efforts to locate any relevant recordings, but Hahn did not believe any additional recording of Rose's interview existed. Two days later, however, (according to an affidavit filed by Cherie Pfaffendorf, a legal assistant from the Outagamie County District Attorney's Office) Pfaffendorf personally handed to Attorney Schmidt a flash drive containing additional video of the interview.

¶9    On June 6, 2019, the day after the State provided defense counsel with the interview video, Dorton entered no-contest pleas to the charges of obstructing an officer, retail theft, delivery of schedule II narcotics, one count of delivering heroin, and three counts of bail jumping. In exchange, the State recommended the outright dismissal of the possession of methamphetamine count and the dismissal as read-in offenses of the possession of drug paraphernalia count, the second-degree reckless injury count, the second count of delivering

4

heroin, and the remaining bail jumping count. The State further agreed not to issue an additional charge of first-degree reckless homicide by drug delivery related to Nina's death (commonly known as a "Len Bias" charge). After the circuit court sentenced Dorton at a subsequent hearing, Dorton moved to withdraw his pleas.

¶10 As grounds for his plea withdrawal motions, Dorton claimed that Schmidt provided ineffective assistance of counsel by failing to share with Dorton the video of Rose's interview, either before Dorton entered his pleas or before sentencing. Alternatively, Dorton claimed he should be allowed to withdraw his pleas based upon the State's failure to provide timely discovery. In support of these claims, Dorton alleged that he would have gone to trial if he had seen the video prior to entering his pleas (or moved to withdraw his pleas prior to sentencing) because the video provided additional grounds to impeach Rose's statement that Dorton had provided her with the drugs she used to overdose. Specifically, Dorton asserted the video showed that Lidbury "manipulated" Rose into incriminating Dorton while Rose was in a vulnerable state.

¶11 The circuit court denied Dorton's plea withdrawal motion without a hearing. The court reasoned that Dorton could not demonstrate a manifest injustice because: (1) Dorton already had substantial grounds to impeach Rose based upon the police report; and (2) the fact that Rose was able to deny Lidbury's request to search her phone demonstrated that Lidbury's interview technique on Rose was not unduly coercive. Dorton now appeals.

5

## DISCUSSION

¶12    In order to obtain a hearing on a postconviction motion, a defendant must allege material facts sufficient to warrant the relief sought. *State v. Allen*, 2004 WI 106, ¶¶9, 36, 274 Wis. 2d 568, 682 N.W.2d 433. No hearing is required when a motion presents only conclusory allegations or when the record conclusively demonstrates that the defendant is not entitled to relief. *Nelson v. State*, 54 Wis. 2d 489, 497-98, 195 N.W.2d 629 (1972). We review a circuit court's decision to deny a postconviction motion without an evidentiary hearing under the de novo standard, independently determining whether the facts alleged would, if proven true, establish the denial of a constitutional right. *See State v. Bentley*, 201 Wis. 2d 303, 308, 548 N.W.2d 50 (1996).

¶13    In the context of a plea withdrawal claim, the facts alleged must either: (1) show the plea colloquy was defective in a manner that resulted in the defendant actually entering an unknowing plea, *see State v. Bangert*, 131 Wis. 2d 246, 251, 389 N.W.2d 12 (1986); or (2) demonstrate by clear and convincing evidence some other manifest injustice undermining the fundamental integrity of the plea, such as coercion, the lack of a factual basis to support the charge, ineffective assistance of counsel, or failure by the prosecutor to fulfill the plea agreement, *see State v. Cain*, 2012 WI 68, ¶26, 342 Wis. 2d 1, 816 N.W.2d 177. When a claim of manifest injustice is premised upon ineffective assistance of counsel, the alleged facts further need to establish both that counsel provided deficient performance and that the defendant was prejudiced by that performance. *State v. Swinson*, 2003 WI App 45, ¶58, 261 Wis. 2d 633, 660 N.W.2d 12. Our consideration of whether a manifest injustice has occurred is based upon the entirety of the record. *See Cain*, 342 Wis. 2d 1, ¶31.

¶14 Here, the entirety of the record demonstrates that Dorton's delayed receipt of the video (whether attributable to counsel or to the State) did not prejudice Dorton so as to constitute a manifest injustice. First, the video added only limited additional impeachment value compared to what was already available from the police report. Most significantly, the report conveyed that Rose initially claimed that she had taken Xanax and morphine that she procured on her own, rather than from Dorton; that Rose was uncertain whether she had taken heroin or morphine; and that Rose never asserted that Dorton had provided her with fentanyl—the actual drug found in her system.

¶15 Second, we do not agree with Dorton that the video shows Lidbury "manipulated" or improperly pressured Rose to state that Dorton provided her with the drugs on which she overdosed. While Lidbury repeatedly challenged or questioned Rose's responses, Lidbury remained calm throughout the interview and informed Rose that the only thing that would get her in trouble was not telling the truth. Rose also maintained sufficient will of her own to refuse a request to turn over her phone. While Dorton asserts that "a calm person can be manipulative," he does little to explain how the context here shows that Rose's will was overcome.

¶16 Third, Dorton has not provided any plausible explanation for why the limited additional impeachment value of the video would have persuaded him to go to trial rather than accept the offered deal. The plea bargain substantially reduced Dorton's prison exposure by not only dismissing five charges, but also precluding the State from filing a Len Bias charge arising from Nina's overdose death. Dorton's motion does not suggest that he would have had any viable defense against a Len Bias charge related to Nina's death. Dorton would have

7

little to gain by going to trial to attempt to gain an acquittal on the charges in the fentanyl case related to Rose's overdose when doing so would expose him to more time in prison related to Nina's death than he could avoid by acquittal on all of the charges in the fentanyl case combined. *See* WIS. STAT. §§ 940.02(2)(a) (making first-degree reckless homicide by delivery of a controlled substance a Class C felony); 973.01(2)(b)3. and (d)2. (providing maximum terms of twenty-five years of initial confinement and fifteen years of extended supervision for a Class C felony); 961.41(1)(a) (making delivery of fentanyl a Class E felony); 973.01(2)(b)5. and (d)4. (providing maximum terms of ten years of initial confinement and five years of extended supervision for a Class E felony); 940.23(2)(a) (making second-degree reckless injury a Class F felony); 973.01(2)(b)6m. and (d)4. (providing maximum terms of seven and one-half half years of initial confinement and five years of extended supervision for a Class F felony); 946.49(1)(b) (making bail jumping a Class H felony); and 973.01(2)(b)8. and (d)5. (providing maximum terms of three years of initial confinement and three years of extended supervision for a Class H felony).

¶17    Finally, one of the charges dismissed pursuant to the plea deal was the second-degree reckless injury count premised upon Dorton providing Rose with the drugs on which she overdosed. In his statement to the presentence investigation agent, Dorton did not deny that he had previously provided Rose with drugs—merely that the drugs Rose overdosed on were the ones that Dorton had supplied to her. We do not deem it manifestly unjust that Dorton entered a plea to a charge substantially correlated with conduct to which Dorton subsequently admitted in exchange for the dismissal of a charge on which he maintained his innocence.

8

¶18    In sum, we are satisfied that the record as a whole conclusively demonstrates that Dorton would not have been entitled to withdraw his pleas even if he were able to prove his allegations that his trial counsel failed to share the additional video from Rose's interview with him, or that the State's failure to timely disclose the video constituted a discovery violation.  Therefore, the circuit court did not err in denying the plea withdrawal motions without a hearing.

*By the Court.*—Judgments and order affirmed.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)5.