DUGAN, J.[1]
¶1 J.A. appeals from the order terminating his parental rights to H.V.A., and the order denying his postdisposition motion.[2] He contends that (1) WIS. STAT. § 809.107(6)(am) requires that the trial court hold an evidentiary hearing upon remand by this court; (2) the CHIPS (child in need of protection or services) order created a substantial parental relationship that precluded the State from alleging failure to assume parental responsibility as a ground for the termination of his parental rights; (3) the failure to assume responsibility ground was unconstitutional as applied to him because the order placing H.V.A. outside the home made it impossible for him to assume parental responsibility;[3] and (4) trial counsel was ineffective for not raising the second and third issues stated above, for failing to request severance, and for failing to inform J.A. that there were defenses to the petition.
¶2 For the reasons stated below, we reject J.A.'s contentions and affirm.
BACKGROUND
¶3 J.A. and J.L.A., respectively, are H.V.A.'s father and mother.[4] J.A. and J.L.A. are married. H.V.A., who is approaching his fifth birthday, was born on February 7, 2014. For approximately three weeks after his birth, H.V.A. was in the neonatal intensive care unit because he was born under the influence of prescription opioid medication taken by J.L.A. On February 24, 2014, an order for temporary physical custody of H.V.A. at a Bureau of Milwaukee Child Welfare (BMCW)[5] approved foster home was issued. He was placed with foster parents and that original placement has continued.
¶4 On November 10, 2014, J.A. was found to be a child in need of protective services. The trial court entered a dispositional order setting conditions for the return of H.V.A. and continuing his placement outside the home. J.A. was required to supervise H.V.A., provide for H.V.A.'s safety, and visit H.V.A. regularly. J.A. was also required to control any drug or alcohol addiction and to understand how addiction affected H.V.A., to cooperate with the sentence in his criminal case, control his mental and emotional health, and control his emotions. J.L.A.'s conditions of return also required her to control any drug or alcohol addiction and to understand how addiction affected H.V.A. The condition regarding addiction also required J.A. and J.L.A. to give a urine sample or breath test for drug and alcohol testing when the social worker or treatment provider told each of them to do so.
¶5 On May 16, 2017, the State filed a petition to terminate J.A.'s parental rights to H.V.A. based on abandonment, continuing CHIPS, and failure to assume parental responsibility.[6] The trial court conducted a hearing on the petition on June 28, 2017, and set final pretrial conference and trial dates.
¶6 At the September 6, 2017 final pretrial conference, J.A. decided to enter a no-contest plea to the failure to assume parental responsibility ground. The trial court conducted a colloquy with J.A. regarding the no-contest plea and it heard testimony in support of the failure to assume parental responsibility ground. Based on the testimony at the hearing, the trial court found that the State had established that J.A. failed to assume parental responsibility, accepted J.A.'s no-contest plea, and set the date for the dispositional hearing.
¶7 The trial court presided over the four-day dispositional hearing that began on December 14, 2017, and ended on February 8, 2018. It heard testimony that, during the sixteen months H.V.A.'s psychotherapist had been treating H.V.A., J.A. had not contacted her. H.V.A.'s foster mother testified that the last time she had contact or communication with J.A. was in August 2017, even though she had sent him Halloween pictures of H.V.A., and information regarding medical appointments.
¶8 Further, the case manager testified that J.A. had not shown that he made behavioral changes since H.V.A. was detained. She made frequent calls to J.A. and "rarely" got a reply. J.A. scheduled two therapy appointments within several months before the dispositional hearing, but did not attend either appointment. Visits with H.V.A. had been changed to five-hour visits twice a week and since that time, J.A. had missed approximately 50% of them or had left significantly early. Throughout the time that the dispositional hearing was proceeding, J.A. continued to miss visits with H.V.A. J.A. did not have a safe suitable home and he was not working.
¶9 On February 9, 2018, the trial court issued a written decision terminating J.A.'s parental rights. The trial court held that
[f]our years into this, this home is not safe due to ongoing substance abuse issues. [J.L.A.] is actively using; [J.A. ], at a minimum, knows this to be true and is acquiescing in such use; they both have been actively manipulating the system to thwart efforts to assure [H.V.A.'s] safety ; [H.V.A.] cannot be safely returned home.
(Emphasis added.) The trial court also stated that "the combination of ongoing substance abuse issues with [H.V.A.'s] emotional struggles and the calm, patient, understanding care they demand [struck the trial court] as an inordinately dangerous combination."
¶10 On February 14, 2018, J.A. filed a notice of intention to seek postdisposition relief. Subsequently, J.A. filed a notice of appeal. He then filed a motion to remand pursuant to WIS. STAT. § 809.107(6)(am) (as amended , eff. Apr. 6, 2018); see also 2017 Wis. Act 258, § 3. He argued that we should order the trial court to conduct an evidentiary hearing on the postdisposition motion. We rejected that argument, but granted the motion for remand and retained jurisdiction over the appeal.
¶11 On August 30, 2018, the trial court issued an order denying J.A.'s postdisposition motion. The record was then retransmitted to this court and the parties briefed the issues on appeal.
DISCUSSION
¶12 J.A.'s first contention that the trial court was required to conduct an evidentiary hearing on his motion, involves statutory construction. The other issues arise from J.A.'s ineffective assistance of trial counsel claim that includes: (1) failing to assert that the CHIPS order created a substantial parental relationship that precluded the State from alleging failure to assume parental responsibility as a ground for the termination of his parental rights; (2) failing to assert that the failure to assume responsibility ground was unconstitutional as applied to him because the order placing H.V.A. outside the home made it impossible for him to assume parental responsibility; (3) failing to request severance; and (4) failing to inform J.A. that issues (1) and (2) constituted defenses to the petition.
I. The standards of review and applicable law
¶13 In considering the interpretation of a statute, our review is de novo . See State v. Turnpaugh , 2007 WI App 222, ¶2, 305 Wis. 2d 722, 741 N.W.2d 488. When interpreting statutes, "[w]e assume that the legislature's intent is expressed in the statutory language." See State ex rel. Kalal v. Circuit Court for Dane Cty. , 2004 WI 58, ¶44, 271 Wis. 2d 633, 681 N.W.2d 110. Statutory interpretation must begin with the language of the statute. See id. , ¶45. If the meaning of the statute is plain, then the inquiry stops. See id. Language is given its ordinary, plain meaning, "except that technical or specially-defined words or phrases are given their technical or special definitional meaning." Id.
¶14 Wisconsin has extended the United States Supreme Court's two-pronged Strickland v. Washington , 466 U.S. 668 (1984) test used to analyze claims of ineffective assistance of counsel in criminal cases to involuntary TPR proceedings. See A.S. v. State , 168 Wis. 2d 995, 1005, 485 N.W.2d 52 (1992). "To prevail under Strickland , a defendant must prove that counsel's representation was both deficient and prejudicial." State v. Williams , 2015 WI 75, ¶74, 364 Wis. 2d 126, 867 N.W.2d 736, cert. denied , 136 S. Ct. 1451 (2016).
¶15 "The standard of review of the ineffective assistance of counsel components of performance and prejudice is a mixed question of law and fact." State v. Johnson , 153 Wis. 2d 121, 127, 449 N.W.2d 845 (1990). "Thus, the trial court's findings of fact, 'the underlying findings of what happened,' will not be overturned unless clearly erroneous." Id. (citations omitted). "The ultimate determination of whether counsel's performance was deficient and prejudicial to the defense are questions of law which this court reviews independently." Id. at 128. "[C]ourts may reverse the order of the two tests or avoid the deficient performance analysis altogether if the defendant has failed to show prejudice." Id. It is not ineffective assistance for trial counsel not to make a losing argument or motion. See State v. Swinson , 2003 WI App 45, ¶59, 261 Wis. 2d 633, 660 N.W.2d 12.
II. The trial court was not required to conduct an evidentiary hearing on J.A.'s postdisposition motion
¶16 J.A. argues that the trial court erred in denying his postdisposition motion without an evidentiary hearing. He asserts that the language of WIS. STAT. RULE 809.107(6)(am) provides a unique procedure for deciding TPR appeals that mandates that once this court grants a motion for remand, the trial court must as a matter of law hold a hearing. We conclude that he is incorrect on both points.
¶17 When interpreting a statute, we begin by looking at the language in the statute seeking to determine the legislature's intent. See State ex rel. Kalal , 271 Wis. 2d 633, ¶45. "If the meaning of the statute is plain, we ordinarily stop the inquiry." See id . (citation and one set of quotation marks omitted). Contrary to J.A.'s argument, it is clear and unambiguous that there is nothing in the plain language of WIS. STAT. RULE 809.107(6)(am) that requires the trial court to hold a fact-finding hearing on remand. Rather, the statute only requires that if this court grants the motion for remand, it must set time limits for the trial court to hear and decide the issue. RULE 809.107(6)(am) provides:
Motion for remand. If the appellant intends to appeal on any ground that may require postjudgment fact-finding , the appellant shall file a motion in the court of appeals, within 15 days after the filing of the record on appeal, raising the issue and requesting that the court of appeals retain jurisdiction over the appeal and remand to the circuit court to hear and decide the issue.... If the court of appeals grants the motion for remand, it shall set time limits for the circuit court to hear and decide the issue , for the appellant to request transcripts of the hearing, and for the court reporter to file and serve the transcript of the hearing. The court of appeals shall extend the time limit under par. (a) for the appellant to file a brief presenting all grounds for relief in the pending appeal.
(Emphasis added to second and third phrases.)
¶18 In support of his argument, J.A. simply quotes the statute-he cites no other authority. Moreover, he fails to identify any specific language in the statute to support his contention that an evidentiary hearing is required. We have examined the plain words of the statute and conclude there is no such language.
¶19 Further, authored, unpublished opinions have held "[t]he statute by its plain language does not entitle [movants] to evidentiary hearings upon demand. Rather, the appellate court's remand requires the [trial court] to 'hear and decide' any issue 'that may require postjudgment fact-finding[.]' " See State v. L.J. , Nos. 2017AP1225, 2017AP1226, and 2017AP1227, unpublished slip op., ¶19 (WI App May 1, 2018).[7] See also State v. A.E. , Nos. 2017AP1773 and 2017AP1774, unpublished slip op., ¶11 (WI App May 8, 2018) (holding that "[i]t is clear and unambiguous that the statute's words do not require that the circuit court hold a fact-finding hearing.... [it] requires only that if the court of appeals grants the motion for remand, it must set time limits for the circuit court to hear and decide the issue ").[8]
¶20 J.A. asserts that criminal case law that addresses whether or not an evidentiary hearing is required for claims of ineffective assistance of counsel is not applicable to TPR cases. He rests his assertion on his statutory construction argument. First, we rejected his statutory construction argument. Thus, we also reject his related contention of the inapplicability of criminal case law regarding when an evidentiary hearing is required for ineffective assistance of counsel claims in TPR cases.
¶21 Further, although J.A. devotes a substantial portion of his argument on why criminal rules governing appeals do not apply to TPR appeals, he cites no authority for his argument. "Arguments unsupported by references to legal authority will not be considered." State v. Pettit , 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992).
¶22 Moreover, as spelled out in relevant case law, such as Oneida County DSS v. Therese S. , the trial court must decide under the applicable framework, which claims require an evidentiary hearing and which do not. See id. , 2008 WI App 159, ¶4 n.2, 314 Wis. 2d 493, 762 N.W.2d 122. In Therese S. , this court held that "[w]hen a parent alleges a plea [in a TPR case] was not knowingly and intelligently made, the Bangert[9 ] analysis applies." Therese S. , 314 Wis. 2d 493, ¶6. The court further explained that "Under that analysis, the parent must make a prima facie showing that the circuit court violated its mandatory duties and must allege the parent did not know or understand the information that should have been provided at the hearing." Id . Citing State v. Brown , 2006 WI 100, ¶40, 293 Wis. 2d 594, 716 N.W.2d 906, the court stated that "It is unnecessary to hold an evidentiary hearing when a parent fails to first present a prima facie case." Therese S. , 314 Wis. 2d 493, ¶4 n.2.
¶23 Thus, Wisconsin case law applies criminal case law in TPR cases involving claims of ineffective assistance of counsel and motions to withdraw a plea. We also will apply that case law in TPR cases when analyzing whether or not an evidentiary hearing is required or discretionary to resolve an ineffective assistance of counsel claim.[10] Thus, the test in this case is whether J.A. made a prima facie showing that trial counsel was ineffective.
¶24 As we explain below, the record conclusively demonstrates that J.A. is not entitled to relief on his ineffective assistance of counsel claim. See State v. Allen , 2004 WI 106, ¶9, 274 Wis. 2d 568, 682 N.W.2d 433. Therefore, we conclude that the trial court did not err in resolving the postdisposition motion without a hearing.
III. The trial court properly found that trial counsel was not ineffective
A. Trial counsel was not ineffective in not arguing that the CHIPS order created a substantial parent-child relationship for purposes of applying WIS. STAT. § 48.415(6)
¶25 To establish the failure to assume parental responsibility as grounds in a TPR action, the State must prove that J.A. did not have a "substantial parental relationship" with H.V.A. See WIS. STAT. §§ 48.415(6)(a)-(b). J.A. argues that trial counsel was ineffective because he failed to argue that the CHIPS order created a "court-ordered and court-supervised substantial parental relationship" that precluded the State from alleging failure to assume parental responsibility as a ground for termination of parental rights. He supports his argument with common dictionary definitions of "substantial" ("something of considerable importance") and "relationship" ("the state of being connected"). J.A. argues that:
By the clear terms of this statute, the creation of a CHIPS order is necessarily a substantial parental relationship.... A CHIPS order connects a parent to his or her child by court order and by court supervision, and the relationship is considerable and important. The creation of an order with conditions of return, visitation schedules, and the requirement that the government provide court ordered services therefore is both substantial and a relationship.
¶26 As noted above, when interpreting a statute, we begin by looking at the language in the statute seeking to determine the legislature's intent. See State ex rel. Kalal , 271 Wis. 2d 633, ¶45. "If the meaning of the statute is plain, we ordinarily stop the inquiry." See id . (citation and one set of quotation marks omitted). "Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning ." Id . (emphasis added).; See also WIS. STAT. § 990.01(1).
¶27 J.A. seeks to define the term "substantial parental relationship" by referencing the common or ordinary meanings of "substantial" and "relationship," as noted above. However, he ignores the fact that the legislature provided a "special definitional meaning" in the statute. The statute provides:
(b) In this subsection, "substantial parental relationship" means the acceptance and exercise of significant responsibility for the daily supervision, education, protection and care of the child. In evaluating whether the person has had a substantial parental relationship with the child, the court may consider such factors, including, but not limited to, whether the person has expressed concern for or interest in the support, care or well-being of the child, whether the person has neglected or refused to provide care or support for the child and whether, with respect to a person who is or may be the father of the child, the person has expressed concern for or interest in the support, care or well-being of the mother during her pregnancy.
WIS. STAT. § 48.415(6)(b) (emphasis added).
¶28 J.A. suggests that we construct another definition of "substantial parental relationship." We decline to do so, relying on the law of statutory interpretation, which requires "that technical or specially-defined words or phrases are given their technical or special definitional meaning." See State ex rel. Kalal , 271 Wis. 2d 633, ¶45. Here, "substantial parental relationship" has a special definitional meaning expressly stated in WIS. STAT. § 48.415(6)(b) ; that is, the "acceptance and exercise of significant responsibility for the daily supervision, education, protection and care of the child," see State v. Bobby G. , 2007 WI 77, ¶45, 301 Wis. 2d 531, 734 N.W.2d 81. Under the legislature's definition, a CHIPS order is not even included among the factors a court is to consider when evaluating whether a "substantial parental relationship" exists. Thus, we rely upon that special definitional meaning.
¶29 Moreover, we are to interpret statutes "reasonably, to avoid absurd or unreasonable results." See State ex rel. Kalal , 271 Wis. 2d 633, ¶46. J.A.'s interpretation of the statute would mean that in every case in which there was a CHIPS order, a parent would be deemed to have a substantial parental relationship, even if the parent had no contact with the child while the CHIPS order was in effect. That would lead to an absurd and unreasonable result. No reasonable reading of the statute's definition of "substantial parental relationship" permits such an interpretation.
¶30 Because counsel cannot be ineffective based on the failure to make a meritless argument, J.A.'s argument that trial counsel was deficient fails. See Swinson , 261 Wis. 2d 633, ¶59.
B. Trial counsel was not ineffective for not arguing that the failure to assume parental responsibility ground was unconstitutional as applied to J.A.
¶31 J.A. also contends that the trial counsel was ineffective because he should have argued that removal of H.V.A. and limiting J.A.'s visitation makes WIS. STAT. § 48.415(6) unconstitutional as applied to him. He largely argues by analogy to Kenosha County DHS v. Jodie W. , 2006 WI 93, ¶39, 293 Wis. 2d 530, 716 N.W.2d 845.
¶32 J.A.'s reliance on Jodie W. is misplaced. We reject J.A.'s argument because it overstates the holding in Jodie W. and because this case is distinguishable. First, Jodie W. was incarcerated during her TPR case. See Jodie W. , 293 Wis. 2d 530, ¶4. J.A. was not incarcerated. Second, Jodie W. involved a TPR proceeding under WIS. STAT. § 48.415(2) -continuing CHIPS. See Jodie W. , 293 Wis. 2d 530, ¶8. It did not involve a claim under § 48.415(6) for failure to assume parental responsibility. See id . Further, the holding in Jodie W. is very narrow and does not apply to the facts here:
We therefore conclude that in cases where a parent is incarcerated and the only ground for parental termination is that the child continues to be in need of protection or services solely because of the parent's incarceration , WIS. STAT. § 48.415(2) requires that the court-ordered conditions of return are tailored to the particular needs of the parent and child.
Id ., ¶51 (emphasis added).
¶33 J.A. argues that, in his case, it is unconstitutional to judge him by the standard of "daily care," where the State made it impossible for him to provide daily care for H.V.A. and, thus, his situation is analogous to that of Jodie W. However, contrary to J.A.'s argument, Jodie W. does not stand for the proposition that where a parent is not incarcerated, but the child is removed from the parent's home, the failure to assume grounds in the statute is unconstitutional as applied. J.A. cites no legal authority suggesting that the definition of "substantial parental relationship" is deficient or holding that having a child in out-of-home placement makes it impossible to assume parental responsibility. We have rejected similar contentions in authored unpublished opinions which, although non-binding, we find persuasive. See A.E. , Nos. 2017AP1773 and 2017AP1774, ¶¶18-21; State v. T.S.R. , No. 2017AP548, unpublished slip op., ¶¶16-31 (WI App Mar. 30, 2018); State v. J.W. , Nos. 2017AP689 and 2017AP690, unpublished slip op., ¶¶23-28 (WI App Feb. 27, 2018). See WIS. STAT. RULE 809.23(3)(b).
¶34 Indeed, we note that the non-exclusive factors to be considered by the trial court when determining whether a person has a substantial parental relationship, include whether "the person has expressed concern for or interest in the support, care or well-being of the child, [and] whether the person has neglected or refused to provide care or support for the child[.]" See WIS. STAT. § 48.415(6)(b). Clearly, a person may express concern or interest in a child's care, support, or well-being, or provide care or support for a child, without having the child within one's home.
¶35 Here, the record shows that J.A. had opportunities to develop a substantial parental relationship with H.V.A., but chose not to do so. The case manager's testimony showed that J.A. could have taken action to establish a substantial parental relationship with H.V.A., such as being involved in H.V.A.'s education, attempting to provide for him, and attending medical and dental appointments. J.A. also could have participated in H.V.A.'s play and occupational therapy, and could have contacted H.V.A. by phone on a regular basis. J.A. does not assert that he did any of those things. J.A. claims that the limitations on visitation impeded his ability to establish a substantial relationship with H.V.A. However, that assertion is belied by the fact that J.A. missed approximately 50% of his visits with H.V.A. The foster mother was also open to having contact and communication with J.A. and had become close with other members of H.V.A.'s extended family, which included communicating with them weekly or every other week, and sharing photographs and information about H.V.A. J.A. could have contacted the foster mother to express his concern and interest in H.V.A.'s care and well-being.
¶36 Based on the foregoing, we conclude that any argument by trial counsel that WIS. STAT. § 48.415(6) was unconstitutional as applied to J.A. would have lacked merit. Therefore, the failure to make that argument would not establish that trial counsel was ineffective. See Swinson , 261 Wis. 2d 633, ¶59.
C. Trial counsel was not ineffective in not requesting severance
¶37 J.A. argues that trial counsel was ineffective in failing to move to sever his trial from J.L.A.'s trial pursuant to WIS. STAT. § 805.05(2). That statute provides that "[t]he court, in furtherance of convenience or to avoid prejudice ... may order a separate trial[.]" J.A. asserts that trial counsel should have requested severance because J.L.A. has a serious drug and alcohol addiction that prejudiced the case against him.
¶38 While J.A. acknowledges that the trial court denied his severance argument on remand "in part on [J.A.'s] refusal to address [J.L.A.'s] addiction problem," he argues that "the trial court's failure to hold a postremand hearing has denied this court the opportunity to go over the evidence carefully. It is not necessarily true that all of the evidence that would have been admissible against [J.L.A.] would have been admissible against [J.A.]."
¶39 A trial court may deny a postdisposition motion without a hearing "if the motion does not raise facts sufficient to entitle the movant to relief, or presents only conclusory allegations, or if the record conclusively demonstrates that the [movant] is not entitled to relief." Allen , 274 Wis. 2d 568, ¶9. J.A. merely presents the conclusory allegation that J.L.A.'s drug addiction prejudiced him. He does not identify what, if any, evidence was prejudicial to him. He makes the conclusory argument that not all the evidence that was admissible against J.L.A. was admissible against him. However, under WIS. STAT. § 805.05(2), the standard is whether he was prejudiced by that evidence. He fails to develop his argument. On that basis alone, we would affirm the trial court's decision. However, to be complete, we address the issue of severance.
¶40 We review issues of severance after initial joinder under an erroneous exercise of discretion. See State v. Salinas , 2016 WI 44, ¶30, 369 Wis. 2d 9, 879 N.W.2d 609. A trial court "erroneously exercises its discretion when it applies the wrong legal standard or makes a decision not reasonably supported by the facts of record." State v. Avery , 2013 WI 13, ¶23, 345 Wis. 2d 407, 826 N.W.2d 60.
¶41 Because trial counsel did not move for severance, we review the trial court's postdisposition motion decision addressing this issue. In denying J.A.'s motion, the trial court stated that J.A.'s argument that trial counsel was ineffective for failing to seek severance was premised on his assertion that J.L.A.'s "continuing substance abuse issues were the primary basis of the dispositional decision and trial counsel should have sought to avoid a spill over prejudicial effect on [J.A.]'s interests by seeking severance." It went on to state:
[T]he argument fails to recognize the specific factual finding made by this court that [J.A.], at a minimum, knew of and acquiesced in the continuing use; actively participated in efforts to avoid detection; and thereby prevented safe reunification.... [J.A.] cannot claim prejudice requiring severance on the basis of detrimental conduct of which he knew and acquiesced in over multiple years.
¶42 The trial court specifically found that J.A. was not prejudiced by evidence that J.L.A. had a drug addiction problem. The record supports that conclusion and, therefore, it is not clearly erroneous. We conclude that the trial court properly exercised its discretion in determining that it would have denied a request for severance.
¶43 Trial counsel is not ineffective for failing to file a futile motion. See Swinson , 261 Wis. 2d 633, ¶59. Therefore, trial counsel was not ineffective in not seeking severance.
D. Trial counsel was not ineffective in not telling J.A. that he had defenses because he had no defenses
¶44 J.A. asserts that trial counsel was ineffective for failing to tell J.A. that he had defenses. The guardian ad litem argues that we should not address this argument because J.A. did not raise the issue in his postdisposition motion. J.A. counters that the following passage in his motion identifies the defenses:
Counsel was ineffective for failing to inform J.A. that the ground alleged violated his constitutional rights and for failing to move to dismiss the ground. Counsel was also ineffective for failing to argue prior to entry of his admission that J.A. could not be judged on whether or not he had accepted and exercised "significant responsibility for the daily supervision, education, protection and care of the child" as the State had made compliance with that standard impossible.
That passage appeared in his postdisposition motion under the heading, "Counsel was ineffective for failing to move the trial court to dismiss the failure to assume parental responsibility claim prior to entry of the admission because the statute was unconstitutional as applied."
¶45 We agree. However, because we rejected J.A.'s argument on those issues above, he had no such defenses. Therefore, trial counsel's failure to tell J.A. about the issues he raised on appeal was not ineffective.
CONCLUSION
¶46 We conclude that the trial court properly resolved J.A.'s postdisposition motion without a hearing, and properly determined that J.A.'s right to effective assistance of counsel was not violated.
By the Court. -Orders affirmed.
This order will not be published. See WIS. STAT. RULE 809.23(1)(b)4.

This appeal is decided by one judge pursuant to Wis. Stat. § 752.31(2)(e) (2015-16). All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.

With the exception of the initial temporary physical custody hearing, the Honorable Christopher R. Foley presided over the entire action, including the postdisposition motion. In this opinion, we refer to Judge Foley as the trial court.

J.A.'s second and third issues on appeal were not raised as separate issues in his postdisposition motion. They were part of his ineffective assistance of trial counsel claim. The sections of J.A.'s appellate briefs regarding the two issues make minimal reference to the two prongs of ineffective assistance and the claim itself. However, we address the issues as they were presented to the trial court-in the context of J.A.'s ineffective assistance of counsel claim. See State v. Allen , 2004 WI 106, ¶27, 274 Wis. 2d 568, 682 N.W.2d 433 (stating "we will review only the allegations contained in the four corners of [the defendant's] postconviction motion, and not any additional allegations that are contained in [the defendant's] brief [to this court]").

The parental rights of H.V.A.'s mother were terminated in parallel proceedings and are not part of this appeal.

The BMCW has since been renamed the Division of Milwaukee Child Protective Services. The agency was known by its prior name when this case was initiated; therefore, all references will be to the BMCW.

Wisconsin has a two-part statutory procedure for the involuntary termination of parental rights (TPR). Steven V. v. Kelley H. , 2004 WI 47, ¶24, 271 Wis. 2d 1, 678 N.W.2d 856. In the grounds phase, the petitioner must prove by clear and convincing evidence that at least one of the twelve grounds enumerated in Wis. Stat. § 48.415 exists. See Wis. Stat. § 48.31(1) ; Steven V. , 271 Wis. 2d 1, ¶¶24-25. In the dispositional phase, the court must decide if it is in the child's best interest that the parent's rights be permanently extinguished. See Wis. Stat. § 48.426(2) ; Steven V. , 271 Wis. 2d 1, ¶27.

Pursuant to Wis. Stat. Rule 809.23(3)(b) authored, unpublished opinions issued after July 1, 2009, may be cited for persuasive value.

See also State v. R.D.S. , No. 2017AP1770, unpublished slip op., ¶¶15-19 (WI App Aug. 28, 2018); Monroe Cty. DHS v. B.L.S. , No. 2018AP322, unpublished slip op., ¶¶18-22 (WI App Aug. 8, 2018). These authored unpublished opinions are cited for their persuasive value. Wis. Stat. Rule 809.23(3)(b).

State v. Bangert , 131 Wis. 2d 246, 274-76, 389 N.W.2d 12 (1986), provides the procedure that trial courts must follow when addressing a claim by a criminal defendant that his or her plea was not entered knowingly, voluntarily, and intelligently because the trial court failed to follow prescribed methods for accepting a plea.

We also note that the Wisconsin Supreme Court has adopted criminal law standards for determining in a TPR case whether a hearing is required on a parent's claim that the trial court has violated its mandatory duties in accepting a plea. See Kenosha Cty. DHS v. Jodie W. , 2006 WI 93, ¶¶24-26, 293 Wis. 2d 530, 716 N.W.2d 845.