COURT OF APPEALS
DECISION
DATED AND FILED

April 6, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If
published, the official version will appear in
the bound volume of the Official Reports.

A party may file with the Supreme Court a
petition to review an adverse decision by the
Court of Appeals. *See* WIS. STAT. § 808.10
and RULE 809.62.

Appeal No. **2018AP2367-CR**

Cir. Ct. No. 2012CF232

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

---

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

V.

JASON M. GRAHAM,

    DEFENDANT-APPELLANT.

---

APPEAL from an order of the circuit court for Brown County: TAMMY JO HOCK, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Seidl, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Jason Graham appeals an order denying his postconviction motion to withdraw his February 2013 no-contest pleas to several

child sex crimes. Graham argues that his pleas were not knowingly, voluntarily and intelligently entered because the circuit court failed to advise him of the elements of "sexual contact" prior to the entry of his plea to a child enticement charge. He further argues that his attorney provided ineffective assistance by: (1) failing to inform him of the definition of "sexual contact" as it applied to his child enticement charge; (2) failing to investigate and advise him on the defense of entrapment; and (3) misrepresenting to him the strength of the State's case based on supposed DNA evidence that did not, in fact, exist. We affirm.

## BACKGROUND

¶2      On February 25, 2013, Graham entered his no-contest plea to a count of child enticement with the intent to commit sexual contact or sexual intercourse, contrary to WIS. STAT. § 948.07(1) (2019-20),[1] resulting from his attempt to meet a fifteen-year-old girl with whom he had been talking online. The purported fifteen-year-old girl was actually a police officer conducting a sting operation, and Graham was subsequently arrested. Pursuant to a plea agreement, Graham also pleaded no contest to two other sexual assault charges from another case, as well as to a charge of bail jumping from a separate case. A charge of using a computer to facilitate a child sex crime was dismissed and read in.[2] The State further agreed to make a sentencing recommendation of ninety days' jail on each of the sexual assault charges, and five years' probation with nine months' conditional jail time on the child enticement charge. Prior to accepting Graham's pleas, the circuit

---

[1] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

[2] As part of Graham's plea, he also agreed to have two uncharged offenses—fourth-degree sexual assault and bail jumping—read in at sentencing.

court confirmed that Graham had reviewed the elements of each of the offenses to which he was pleading with his trial counsel, Lawrence Vesely, that he understood those elements and the constitutional rights he was waiving by pleading no contest, and that he had initialed the jury instructions and waiver of rights form attached to the plea questionnaire.

¶3      The circuit court sentenced Graham to five years' initial confinement and six years' extended supervision for the child enticement charge. It also imposed sentences of five years' initial confinement and six years' extended supervision for the charge of second-degree sexual assault, nine months' jail for the charge of sexual intercourse with a child age sixteen or older, and two years' initial confinement and three years' extended supervision on the bail jumping charge. All of Graham's sentences were ordered to run concurrently.

¶4      In May 2014, Graham filed a pro se postconviction motion seeking to withdraw his no-contest pleas to each of the three counts. Graham claimed that Vesely provided ineffective assistance by incorrectly informing him that the State had DNA evidence in relation to Graham's charges of second-degree sexual assault and sexual intercourse with a child age sixteen or older. Graham also argued, among other things, that Vesely was ineffective for failing to inform him of the definition of "sexual contact" as that term was used in the child enticement statute, and for failing to raise the defense of entrapment to that same charge.

¶5      The circuit court held an evidentiary hearing on Graham's motion, limiting it to a review of whether Vesely was ineffective as to the DNA evidence issue and for failing to inform Graham of the definition of "sexual contact" as used in the charge of child enticement. On the DNA issue, the court found Vesely's testimony to be more credible than Graham's. In particular, the court accepted

Vesely's testimony that he had discussed the potential existence of DNA evidence with Graham, but that their conversations focused primarily on the multitude of charges against Graham and the favorability of the proposed plea bargain. Given this discussion, the court concluded that Graham had not "pled solely because he believed that the State had DNA evidence." The court found Graham's claim—that Vesely had affirmatively told Graham that the State had Graham's DNA to use as evidence in the separate sexual assault case case—not to be credible, and concluded that Vesely had therefore not performed deficiently on the DNA issue. Regarding Graham's claim that Vesely was also ineffective for failing to investigate the DNA evidence, the court found Graham did not allege—much less credibly so—that he would have pled differently if such an investigation had occurred, and he had therefore failed to establish prejudice based on Vesely's actions.

¶6 As to Graham's argument that he was not given the definition of "sexual contact" as it applied to child enticement, the circuit court found that both Vesely and the court had discussed the elements of child enticement with Graham and confirmed he understood them. The court, therefore, concluded that Graham's plea to that charge was knowing, intelligent and voluntary. In all, the court dismissed the entirety of Graham's postconviction claims.

¶7 Graham filed a number of other motions and appeals over the ensuing years, pursuant to various dismissals by Graham and extensions of time as granted by this court. Ultimately, Graham, now represented by counsel, filed a final postconviction motion, arguing that his no-contest plea should be withdrawn because: (1) the circuit court did not inform Graham of the statutory definition of "sexual contact" as it pertained to his child enticement charge; (2) Vesely provided ineffective assistance by failing to inform Graham of this definition; (3) Graham

4

was not informed that his plea could result in him being subject to commitment as a sexually violent person;[3] and (4) Vesely was ineffective for failing to inform Graham of the availability of an entrapment defense.[4]

¶8      The circuit court held an evidentiary hearing on this final motion and denied Graham's claims.  Although the court first explained that it believed Graham's claims were procedurally barred under WIS. STAT. § 974.06, it stated that it would deny Graham's claims even on their merits, finding that Vesely had not been constitutionally ineffective in his representation.  The court limited its review to the new issue on appeal—whether Vesely was ineffective for failing to inform Graham of a potential entrapment defense, or for failing to obtain from the State a copy of Graham's emails with the police officer.

¶9      In particular, the circuit court found Vesely to be a credible witness, and it deemed his strategic decision not to pursue an entrapment defense as objectively reasonable, given its low likelihood of success.  The court recounted that, based on the "enormity" of the charges against Graham, Vesely had informed Graham of the lengthy prison sentence that Graham was facing and discussed with him the potential advantages of accepting the State's plea offer.  The court also alluded to Vesely's testimony that he did actually discuss the defense of entrapment with Graham before his plea hearing.

---

[3]  Graham later abandoned this claim, and it is not at issue in this appeal.

[4]  Graham did not raise again in this final postconviction motion the DNA-evidence issue from his earlier motion activity.  For the reasons stated below, we are treating this appeal as Graham's direct, consolidated appeal, such that the DNA-evidence issue is properly before this court pursuant to WIS. STAT. RULE 809.10(4).  *See infra* ¶12.

¶10    In contrast to Vesely, the circuit court again found Graham not to be credible. It based this determination on a number of "self[-]serving" and unbelievable comments that Graham made during the evidentiary hearing, including Graham's claim that he had only showed up to the meeting that led to his arrest "to prove that [the fifteen-year-old girl] was a cop." The court found that Vesely did not perform deficiently by electing not to pursue an entrapment defense. It further concluded that Graham was not prejudiced by this decision because the facts demonstrated that Graham was a willing participant to the crimes he was charged with and entrapment would not have been a successful defense. Additionally, the court concluded that Vesely did not perform deficiently by failing to obtain a copy of every email sent between Graham and the officer conducting the sting operation, because the relevant contents were detailed in the criminal complaint and police reports. Graham now appeals.

## DISCUSSION

¶11    As an initial matter, the State contends that Graham is procedurally barred from raising the issues in this appeal. Whether a defendant's claims are procedurally barred is a question of law that this court reviews de novo. *State v. Tolefree*, 209 Wis. 2d 421, 424, 563 N.W.2d 175 (Ct. App. 1997).

¶12    Although the circuit court's decision rejecting Graham's initial claims was issued more than four years before his notice of appeal, Graham correctly notes that the extensions of time granted by this court to file amended postconviction motions or a notice of appeal effectively authorized his right to appeal that initial decision even at this later date. At no time did Graham's right to a direct appeal lapse, as this court consistently extended Graham's time to file his

6

direct appeal of all the issues in his case. Accordingly, we conclude this appeal was timely filed, and we proceed to address Graham's arguments on their merits.

¶13 Graham first argues that the definition of "sexual contact" was not included with his plea questionnaire for the charge of child enticement, and that neither the circuit court nor Vesely discussed that definition with him before he pled. Graham argues that these failures rendered his no-contest plea to the child enticement charge unknowing, involuntary and unintelligent, and he asserts that if he had been aware of the definition, he never would have pled no contest.[5]

¶14 Although a defendant's failure to understand the elements of the crimes to which he or she has pled can be the basis for withdrawing a plea, Graham was not required to understand the meaning of "sexual contact" because the definition of that term is not an element of the crime of child enticement. To explain, our supreme court recently held that a defendant does not need to understand the definition of the term "sexual contact" in order to enter a valid guilty plea to a charge of child enticement. *State v. Hendricks*, 2018 WI 15, ¶21, 379 Wis. 2d 549, 906 N.W.2d 666. The court explained that an act of sexual contact is one mode of committing child enticement and is not an element of the crime itself; therefore, not knowing the definition of "sexual contact" does not cause a plea to be defective. *Id.* Graham does not even address *Hendricks* in his

---

[5] Graham further alleges that the circuit court did not give him a proper hearing on this issue at his evidentiary hearing because he inadvertently raised the argument in relation to the incorrect case. We do not discern this point as an independent issue on appeal, and the record reflects that although Graham's argument did cause the court some confusion, after a colloquy between the court and Graham's attorney, the court ultimately determined Graham had reviewed the elements of the claim with his attorney, and that the evidence in the hearing supported that conclusion. Accordingly, the circuit court fulfilled it obligation under *State v. Bangert*, 131 Wis. 2d 246, 389 N.W.2d 12 (1986), in holding an evidentiary hearing on Graham's claim.

briefs to this court, and Graham's claims in this respect plainly have no merit. In other words, even assuming Graham's allegations are correct that he was not given and did not understand the definition of "sexual contact," the absence of that knowledge does not, as a matter of law, render his plea invalid as to child enticement.

¶15    Furthermore, the record is clear that Graham's plea was otherwise proper and informed. To ensure that a defendant has understood the nature of a charge—a key factor in ensuring that a plea is made knowingly, intelligently and voluntarily—a circuit court may employ one or any combination of three methods. *State v. Bangert*, 131 Wis. 2d 246, 268, 389 N.W.2d 12 (1986). It must: (1) summarize the elements of the crime by reading from the jury instructions or applicable statute; (2) ask defense counsel whether he or she explained the charge to the defendant, and have counsel summarize that explanation; or (3) expressly refer to the record or other evidence of the defendant's knowledge of the nature of the charge established prior to the plea hearing. *Id.*

¶16    When asked at the plea hearing, Graham told the circuit court that he understood the elements of the charges against him and confirmed that he had read and initialed the plea questionnaires, demonstrating that he understood the elements of the charge of child enticement. Moreover, the court found that Vesely had discussed with Graham the elements of child enticement before the plea colloquy, further informing Graham of the nature of that crime. Graham was presented with the requisite information regarding the charges against him on several occasions, and each time he confirmed that he understood that information. The record shows that Graham understood the charges against him, and he may

not withdraw his no-contest pleas due to any alleged failure regarding his understanding of the term "sexual contact."

¶17     Graham next claims that Vesely was ineffective in his representation on several bases.  An ineffective assistance of counsel claim presents a mixed question of fact and law.  *State v. Pitsch*, 124 Wis. 2d 628, 633-34, 369 N.W.2d 711 (1985).  To establish a claim of ineffective assistance, a defendant must prove two elements: (1) deficient performance by counsel; and (2) prejudice resulting from that deficient performance.  *See State v. Sholar*, 2018 WI 53, ¶32, 381 Wis. 2d 560, 912 N.W.2d 89.  We will uphold the circuit court's factual findings regarding what actions counsel took and the reasons for them unless they are clearly erroneous.  *See State v. Balliette*, 2011 WI 79, ¶19, 336 Wis. 2d 358, 805 N.W.2d 334.  However, whether those facts fulfill the legal standard for constitutionally ineffective assistance is a question of law that we review independently.  *Pitsch*, 124 Wis. 2d at 634.  We need not address both elements of the ineffective assistance test if the defendant fails to make a sufficient showing on one of them.  *State v. Swinson*, 2003 WI App 45, ¶58, 261 Wis. 2d 633, 660 N.W.2d 12.

¶18     First, Graham asserts that Vesely was ineffective for failing to explain the definition of "sexual contact" to Graham on the charge of child enticement.  We disagree.  Again, *Hendricks* holds that the definition of "sexual contact," being only a mode of committing the subject crime, is not required knowledge for a defendant to make a valid plea to the charge of child enticement. *Hendricks*, 379 Wis. 2d 549, ¶21.  Because Vesely carefully discussed the actual elements of the crime with Graham, he cannot be deficient for failing to discuss a definition that was ultimately unnecessary to Graham's understanding of his plea. Graham has provided no counter or qualification to *Hendricks* or to Vesely's

9

actions that show that they were deficient, and we need not address prejudice on this issue. *See Swinson*, 261 Wis. 2d 633, ¶58.

¶19 Graham next argues that Vesely was ineffective for failing to obtain copies of his email conversations with the police officer posing as an underage girl, and for not informing Graham of the defense of entrapment. As to the latter issue, Graham claims that were he aware of such a defense, he would not have pled no contest. In addressing Graham's ineffective assistance claims we note that attorneys are given wide discretion in the use of their professional judgment in creating a legal strategy, and there is a "strong presumption" that their conduct is reasonable." *See Strickland*, 466 U.S. at 689-90.

¶20 Vesely's failure to obtain Graham's emails in considering a potential entrapment defense did not amount to deficient performance. Although Vesely did not look directly at the email conversations between Graham and the officer, he reviewed both the police reports and the summaries of Graham's conversations obtained in discovery in order to evaluate whether an entrapment defense might be successful. An attorney is not required to review every piece of evidence in order to determine whether a strategy or defense would be applicable, and those decisions can still be reasonable after a less than complete investigation of the law and facts. *State v. Carter*, 2010 WI 40, ¶23, 324 Wis. 2d 640, 782 N.W.2d 695.

¶21 Although not mentioned by either party in their briefs, the circuit court's ruling on Graham's final motion points to Vesely's testimony that he had, in fact, discussed the defense of entrapment with Graham prior to his plea hearing. The court found this testimony to be credible, and the court further found credible Vesely's testimony that his decision not to pursue the defense was primarily based

10

on the totality of the charges facing Graham and the attractive nature of the plea deal.

¶22    Under most circumstances, the existence of the circuit court's factual finding that Vesely discussed an entrapment defense with Graham before his plea hearing would be the end of our analysis of this particular ineffectiveness argument. We must accept the circuit court's assessment of the credibility of a witness unless we can conclude that a witness was credible or incredible as a matter of law. *Schultz v. Sykes*, 2001 WI App 255, ¶32, 248 Wis. 2d 746, 638 N.W.2d 604. However, because these findings were not raised or developed by either party in their briefs (most notably the State), we elect to address whether Graham suffered prejudice while assuming that a discussion between Vesely and Graham regarding the merits of an entrapment defense never happened.

¶23    Graham was not prejudiced even if Vesely declined to discuss an entrapment defense with him. To show that he was prejudiced, Graham has the burden to show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *See Strickland*, 466 U.S. at 694. Because he is challenging a no-contest plea, Graham would need to show a reasonable probability that he would have insisted on going to trial if not for his counsel's error. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Although courts consider multiple factors, when a defendant claims that counsel failed to advise him or her of an affirmative defense, "the resolution of the 'prejudice' inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial." *Id.* at 371. Other important considerations include "the relative consequences of a conviction after trial and by plea," and the benefits involved in the plea offer. *Lee v. United States*, 137 S. Ct. 1958, 1966 (2017).

11

¶24    Here, the circuit court deemed Vesely's decision not to pursue an entrapment defense as being "strategic," "well-reasoned and based on professional judgment." For several reasons, we agree. First, it is clear that an entrapment defense would not likely have succeeded at trial. Successfully arguing entrapment would have required Graham to prove that the law enforcement officer induced him through "*excessive* incitement, urging, persuasion, or temptation." *See State v. Hilleshiem*, 172 Wis. 2d 1, 9, 492 N.W.2d 381 (Ct. App. 1992). If that bar were met, the government would then have the burden to prove beyond a reasonable doubt that the defendant was predisposed to commit the crime. *Id.* at 474.

¶25    Graham's conversations do not reveal excessive police action aimed at inciting Graham to act. Instead, they reveal that Graham placed an advertisement online and followed up continuously with someone whom he thought was a fifteen-year-old girl, asking for pictures, discussing her sexual history and underwear size, and trying to meet with her. Although Graham argues that the officer consistently introduced sex into the conversation, it was Graham who initiated a meetup with an underage girl for sexual purposes, and who communicated with her about sexual topics. The circuit court found that Graham's argument that he went to the meeting only to prove that the girl was actually a cop was incredible, and Graham fails to show that finding is clearly erroneous. Moreover, Graham was charged with additional counts of engaging in sexual intercourse with underage girls while the case was pending. The court held this fact could reasonably be a basis for the State's argument that Graham was predisposed to this type of behavior. As the record ably shows that an entrapment defense was not likely to succeed at trial, Vesely's decision not to pursue an entrapment defense was reasonable and not deficient.

¶26 Second, Graham has not shown that there is a reasonable probability he would have proceeded to trial if Vesely had presented a potential entrapment defense to him. The circuit court found Graham's testimony on the issue of entrapment generally to be incredible given the "self[-]serving" nature of his comments. This determination renders unlikely Graham's unsupported statements that he would have proceeded to trial, especially with such an advantageous plea deal on the table. Graham needed to support his allegations with "objective factual assertions" to show that he would have pleaded differently but for the alleged deficient performance. *See* **State v. Hampton**, 2004 WI 107, ¶60, 274 Wis. 2d 379, 683 N.W.2d 14.

¶27 Graham makes no argument in this regard, and he points to no facts supporting this conclusion. Although it is, admittedly, difficult to assert how one would have reacted to a defense that was not presented to him, Graham provides no other facts that might solidify his argument—e.g., conversations that he was committed to pursuing any defense no matter how unlikely, or that he was indecisive and asking his attorney for all possible affirmative defenses even with the advantageous plea deal in front of him. Graham makes no argument suggesting that Vesely's discussing an entrapment defense—one he certainly would have prefaced as being unlikely to succeed—would have caused Graham to go to trial. Rather, Vesely testified that the totality of the charges against Graham led him to recommend the plea deal, irrespective of any possible entrapment defense. In short, it is very unlikely Graham would have opted for an ill-fitting affirmative defense and risk losing his plea deal, especially with the severity of the charges against him, and he cannot meet his burden of showing otherwise, such that he was prejudiced.

¶28 Finally, Graham argues Vesely was ineffective for failing to investigate the laboratory report containing the DNA analysis relating to the charges of second-degree sexual assault and sexual intercourse with a child age sixteen or older, and for subsequently telling Graham, "It's not good, they have DNA evidence against you," when no such evidence existed. We disagree.

¶29 Vesely testified he did not tell Graham that there was DNA evidence against him, only that there was a potential for DNA evidence among the multiple charges. The circuit court, accordingly, determined that Graham was not credible in his claim that Vesely had told him that the State had his DNA. It also found incredible Graham's claim that he would not have entered no-contest pleas if he had properly understood the relative strength of the State's DNA evidence. To the contrary, the court credited Vesely's testimony that the plea decision was based on a number of factors, including the number and nature of the charges against Graham and the reasonableness of the plea offer. The number of charges that Graham faced, coupled with an advantageous plea agreement, make it unlikely that Graham would not have pled no contest, even if Vesely had addressed or investigated the existence of DNA evidence in the manner Graham prefers. Graham has failed to prove he was prejudiced by Vesely's decision.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

14